Good morning, Your Honors. May it please the Court, my name is Jose Bejar and I represent the farm workers. I've allotted 5 minutes of my time today to the Department of Labor and I will reserve 2 minutes of my remaining time for rebuttal. Just watch the clock, counsels, if you want to accomplish all of that. I will do my best, Judge. Very well. Thank you. The District Court committed 3 principal errors, each requiring reversal. First, it wrongly concluded that the costs paid by the farm workers for transportation, visa, and immigration documentation and recruitment, all primarily for Peri & Sons' benefit under the FLSA, were not reimbursable during the farm workers' first week of employment to raise their wages up to the required federal minimum. Second, the District Court erred in dismissing the breach of contract claim in the second amended complaint on the basis that it did not allege specific breaches when, in fact, the second amended complaint alleges 5 specific breaches. And third, the District Court erred in limiting all federal and state wage claims to a 2-year period when the second amended complaint alleges a willful violation of the FLSA, invoking a 3-year statute of limitations, and when Nevada law applies a 6-year statute of limitations to the farm workers' breach of contract claims and a 4-year statute of limitations to their constitutional wage claims. Counsel, on the question of malice as extending the statute of limitations from 2 to 3 years, as I understand your complaints, they relate to alleged damages incurred from 2005 to the present. Subject, of course, to whatever appropriate statute of limitations applies, is it not true that during the period of time, the regulations upon which you rely significantly changed on the issues presented in this case? And that at least at one time, the conduct that was validated by the District Court in this case was consistent with the regulations. Now, as to any period of time in which conduct was consistent with the regulations, how can you say that that conduct was malicious or a conscious violation of the law and thus available to extend the statute of limitations? Judge, I have two responses to that question. First of all, I think that is something that needs to get sorted out in the District Court. The DOL regulations were fairly consistent for decades. In fact, they were consistent for decades. They changed during a three-month period of time, from December 2008 to about March of 2009. I would certainly submit that to the extent that there were farm workers who worked at Perry & Sons Fields during that period of time, those claims may be barred for that period of time. But in reality, we did not get this far in the District Court. In reality, my understanding is that the onion-picking season normally begins in April and lasts through about September or October. So even for this short three-period of time in the 50 years that the DOL regulations were consistently interpreted, there would have been no farm workers working at Perry & Sons during that period of time. And by the time they would have begun the season in April, the regulations reverted back to the DOL's longstanding interpretation. So for purposes, then, of our view of the DOL regulation, you're telling us that since there were no workers during this period from September 2008 through March of 2009 that were actually in the field, we should just interpret the DOL regulation as, in effect, being consistent for 50 years. Is that correct? Well, I think under the Supreme Court's Long Island Care decision, the Supreme Court said that a change in interpretation alone does not provide a ground for disregarding the DOL's present interpretation. The DOL's present interpretation as provided to this Court in its amicus was fairly consistent since 1960, except for this short period of three years. I authored Christopher v. Smith's client, so I'm familiar with amicus briefs of the Department of Labor. But I think in this case, I find that the Department of Labor was quite consistent for a long period of time. And for purposes of this case, your argument is that the interpretation that the DOL applied for all those years is the one that should apply in this case. Is that correct? Yes, that is correct. And I will just add, not to step on the DOL's toes here, but I will just add that when the DOL withdrew, it's what I will call incorrect interpretation for that three-month period. They did instruct employers that the interpretation for that three-month period could not be relied on. Counsel, we have two cases, none of the Ninth Circuit, it turns out, that may be relevant here. The first is the Fifth Circuit case in Castellanos-Santeros and the Eleventh Circuit case in Arriaga v. the Decatur Hotel. Can you give us your insight into which, if any, of those cases we should be taking into account? Yes, Judge, of course. We submit that the Arriaga Court of the Eleventh Circuit got it right. And that is because under the FLSA, the farmworkers, just like any other non-exempt employees, are to receive the Federal minimum wage for all hours worked per week. The second amended complaint in our case says that Perry & Sons did not pay the farmworkers at least the minimum wage for all hours worked. This Court in Biggs v. Wilson instructs that the wages remain unpaid unless paid on the employee's regular payday. In this case, the regular payday was the first week of work. The only statutory exemption to this rule under the FLSA is found in Section 203M. 203M says that employers may take a credit against payment of the minimum wage for furnishing board, lodging, or other facilities that benefit the employee. As this Court acknowledged, in Borba Dilla-Hedman, Section 203M must be analyzed to determine whether a particular cost primarily benefits the employee or primarily benefits the employer. That is the analysis that the Arriaga Court conducted. That is the analysis that the district court failed to conduct in this case. Had the district court properly analyzed the primarily for the benefit of standard, it should have determined that the cost that we seek in this case pursuant to the DOL regulations interpreting the Section 203M for transportation, visa, and recruitment costs all primarily benefit the employer. The district is troubled by the fact that neither of these cases were subsequent to the 2010 amendments? I'm not troubled by that at all, Judge, because, again, the interpretations and the regulations were consistent. And our claims in this case host date includes the 2010 amendments. Counsel, you're down to 7 minutes, which includes the 5 you wish to give to your colleague plus the 2 you would like to reserve. Oh, I'm sorry. Your choice. I will save my remaining time for rebuttal. Very well. Thank you. Thank you, counsel. We will hear from the U.S. Department of Labor. Good morning, Your Honors. May it please the Court. My name is Diane Heim, and I represent the Secretary of Labor participating as an amicus in this case. Section 3M of the FLSA allows employers to take credit for the reasonable cost, as determined by the administrator of the wage and hour division, of board, lodging, and other facilities. Pursuant to that statutory authority, the departments published legislative rules using notice and comment procedures to define what constitutes a facility. The regulations make clear that a facility must be something like board and lodging. In other words, it must be for the primary benefit of the employee, not the employer. And if something is not for the primary benefit of the employee, the employer may not take credit for it and may not do so indirectly by shifting that cost on to the employees where it would bring them below the minimum wage. The department thinks there are three regulations that shed light in this case on the reasons why the transportation and visa expenses are for the primary benefit of the employer, not the employee. The first is 531.35, which gives one example of something that's a tool of the trade  But the regulation says that's just an example and then directs the reader to 531.32c. That regulation gives more examples of things that are for the primary benefit of the employer, including, in certain cases, transportation expenses, where those expenses are an incident of and necessary to the transportation to the employment in question. And it distinguishes in 531.32a a normal home-to-work commute. But, again, those are just examples. And that regulation points to the regulation at 778.217, which sheds even more light on when transportation expenses are and are not for the primary benefit of the employee. The 778 regulation says, quote, a normal everyday home-to-work commute is for the primary benefit of the employee. But, quote, a particular occasion or unusual temporary excess kind of transportation expense is not. Those are for the primary benefit of the employer.  Can I get the benefit of the Department's view on the following? As my colleague, Judge O'Scanlan, mentioned, and specifically on February 12, 2010, the Department at 75 Federal Register 6884, after notice and comment, stated, and quotes, government-mandated fees such as visa application, border crossing and visa fees, including those imposed by the DHS or other government contractors, are integral to the employer's choice to use the H-2A program to bring foreign workers into the country. Such expenses provide no benefit to the employee other than for that particular limited employment situation. That, of course, answers the question here. My question is, how does that determination affect the window, if you will, when the interpretation was different? How should we view that? Well, Your Honor, that interpretation in 2010 is consistent with the interpretation that we've had going back at least to 1960. It's been reaffirmed repeatedly every decade since 1960 with regard to transportation expenses. An interpretation, the Supreme Court recognized in Auer and gave full binding deference to the Department of Labor's interpretation in that case of an FLSA salary basis rule, even though the first time the department said it was in a brief to the Supreme Court. So when the Department of Labor issues an interpretation, it's saying what the law always meant. It's just clarifying. It's not creating new law. So unlike what the Court in Decatur Hotels was concerned about retroactivity and refused to give deference to the department's views because it was concerned that the field assistance bulletin was written after the first work weeks in that case, that's really not a problem. From the department's perspective, this is a declaration of law that should be binding on us under Auer and that has basically sweeps away the issue of the gap. That's correct, Your Honor. Yes. Counsel, if you have nothing further, the remaining time is to be reserved to your  Thank you, Your Honor. Thank you. We will now hear from Perry & Sons. Thank you, Your Honor, and good morning. May it please the Court, Brad Johnston on behalf of Perry & Sons Farms. Perry & Sons certainly does benefit from its participation in the H-2A employment program, and there are certain expenses that it must and should pay. However, the employees also benefit from that employment relationship, and there are certain costs that they should bear. And herein lies one of the greatest flaws in both the Department of Labor's interpretation and the guest workers' complaint. They categorically allege that any and all costs associated with the H-2A program primarily benefit the company, with no corresponding benefit to the guest workers. That categorical approach runs afoul of both the Fair Labor Standards Act and the specific regulations that the Department of Labor has adopted in connection with the H-2A program. Counsel, let's look at the specifics in this case. What expenses that the plaintiffs claim are primarily for the benefit of the employer do you believe are primarily for the benefit of the employee? The passport and immigration fees, for one. Okay. Now, would they have had that had they not come to work for your client? Well, they may have had the passport, because that can be used for any purpose. But the Department of Labor, in the H-2A context, has specifically said that the passport fees are the responsibility of the employee. Well, I understand that, but that's in terms of getting the passport. This is a labor issue here, not a State Department issue. So the question is, if these employees were not coming to work for your client, why would they have bothered to get these in the first place? They may not bother to get a passport. They would probably not get the visa or the I-94, but in the H-2B context, the Department of Labor has also said the visa expenses are primarily the responsibility of the employee. And so there has to be a line. Things that simply render an employee eligible for the employment are not tools of the trade. They benefit the employee by making the employee eligible for employment. The reality is, though, that somebody has to draw the line. I admit there can be an ambiguity, but that's where Auer comes in, isn't it? I don't believe so, and I want to address Auer and Long Island. The Department of Labor and the guest workers stress that the Supreme Court gave deference to the Department of Labor in Auer and Long Island care, but they don't explain to this Court why was deference given in those two cases. Deference was given in those two cases because in Auer, the Department of Labor simply took a longstanding interpretation and rule that existed under the FLSA and applied it to public sector employees once public sector employees were covered by the FLSA. The Court said, well, that's reasonable. We can't find any reason to distinguish between the two public and private employees. Here you have just the opposite. You have the Department of Labor advancing an interpretation of the Fair Labor Standards Act that even the Department of Labor says would not apply to a domestic seasonal worker. And it's this notion. Is it incident of and necessary to employment? There's all kinds of seasonal employment in this country. We can look at ski resorts around Lake Tahoe in this circuit. We can look at the fishing industry in Alaska that's seasonal. Now, these industries, these businesses recruit workers from within the United States to fill that seasonal employment. Under the Department of Labor's interpretation, their travel would be incident of and necessary to employment and require those employers to reimburse the workers for their relocation expenses. Excuse me, counsel, but I thought we were talking about the facts of this case, where people are coming from outside the country, because otherwise you wouldn't have this particular kind of visa involved. And I guess I would ask you, aside from the gap, do you contend that the Department of Labor's construction of this particular regulation has varied over the last 50 years? It has varied. And, in fact, if the Court looks at the Eleventh Circuit's decision in Arriaga, even in Arriaga the Court rejected the notion that it should defer to the prior opinion letters. More importantly, if the Court, because in the Arriaga rationale, the Eleventh Circuit said there was no explanation in these opinion letters. So the notion that there's been a consistent interpretation back to the 1960s is flawed, and Arriaga then went to the dictionary. Well, Arriaga was a 2002 case, and we're dealing here with 2010 regulations, are we not? Correct. But the first time the Department of Labor spoke in response to Arriaga, it said Arriaga was wrongly decided. It then withdrew that rule, and in 2010 adopted the new rule. But the H-2A regulations that tell us when inbound travel expenses must be reversed was not changed in 2010. The H-2A regulation adopted in 2010 said passport fees are the responsibility of the employee. And I would go back to their two very important letters contained in the addendum to the amicus brief, which stated that the Department of Labor was not going to enforce its interpretation of the Fair Labor Standards Act as it related to inbound travel reimbursement if the H-2A regulations were satisfied. This Court in SEIU v. County of San Diego specifically stated, when Judge Trott was writing for the Court, that a non-enforcement policy is tantamount to an admission that the interpretation is unsustainable. And herein lies one of the biggest issues that the Department of Labor does not come forward to this Court and address. Why was there a non-enforcement policy on the part of the Department of Labor for years under its interpretation of the Fair Labor Standards Act? In addition, the Department of Labor and the guest workers cannot reconcile their interpretation with the FLSA, with the specific H-2A regulations. The crux of the guest workers case and the crux of the Department of Labor's interpretation is that inbound travel constitutes an impermissible kickback under the Fair Labor Standards Act. There is, however, a nearly identical prohibition against kickbacks found in the H-2A regulations. But the Department of Labor maintains that the kickback prohibition found in the H-2A regulations does not require the immediate reimbursement of the inbound travel expenses. Why? Because the Department of Labor is forced to choose between a lesser of two evils. They either have to interpret the prohibitions against kickbacks found in the two regulations differently, which they do, or interpret them the same. If the Department of Labor interpreted the kickback language found in both the FLSA and the H-2A regulations the same, then the 50 percent rule the Department of Labor has adopted would be read out of existence in its entirety, because Perry & Sons would be obligated to reimburse the workers up to the adverse effective wage rate under the H-2A regulations. Kennedy. One second. I want to get a clarification from you. I'm looking at Pennside 1239 and Arriaga. I think you said that the administration's opinion letters had varied on this issue. I can read it to you, but it says just the opposite. It says they have been consistent. They wish there were more meat in the opinions, but they say they have not varied. If I said they had varied, Your Honor, then I misspoke. That's what I understood. The Arriaga said there was no explanation given by the Department of Labor. That's what it says. But I just want to be sure that we're on the same page here. Correct. Even though you may not agree with it, even though the opinions were thin. Sure. They have been consistent for the 50 years, correct? Except for the gap period. Well, they haven't been consistent. What they've said is travel expenses are primarily for benefit of the employer. Right. We don't dispute that if the worker works some portion of the contract, period. Here is another flaw in the Department of Labor's interpretation. If an H-2A guest worker arrives at Nearington, Nevada at Perry & Sons and works one hour, then according to the Department of Labor, Perry & Sons would be required to pay that worker for the one hour of work and reimburse the worker for all of their inbound travel expenses, for all of their immigration expenses under the theory that Perry & Sons was the primary beneficiary of that travel for only one hour of work. Do we have any of the plaintiffs in this case that fit your scenario? I don't know if any of the plaintiffs do fit that scenario. But more importantly, Your Honor, that is the interpretation the Department of Labor is urging this Court to adopt, that any amount of work by an H-2A worker then foists the inbound travel expenses onto Perry & Sons, irrespective of the 50 percent rule. And under that scenario, Your Honor, Perry & Sons is at a worse-off position than had the worker never arrived, because now there's a hole in the labor force, a hole in the labor force Perry & Sons could not fill with a domestic worker. But Perry & Sons, let's be practical, Perry & Sons would not bring somebody in from outside the country and hire them for one hour and have them go away, would they? We would not. But there is the risk that the employee could do that. An employee could spend four hours harvesting onions and decide, for whatever reason, a family emergency in Mexico, that they want to return home. In that situation, Perry & Sons does not receive a real benefit from the inbound travel and immigration expenses. That's why the Department of Labor actually ---- But you're letting the tail wag the dog. The reality is you can maybe have an exemption for an individual, I suppose. But the reality is, overall, that's really how we have to construe this regulation, isn't it, on a common-sense basis as it applies generally? But with the rule that they're adopting now, they're creating no exception and they're reading out of existence the judgment they made in the H-2A regulations, that there becomes a point in time when the travel benefits the employer to a sufficient degree that it becomes incumbent upon the employer to pay for those expenses. That's when the employee completes 50 percent of the work contract. That's the key issue here. And when we talk about deference to the Department of Labor, I go back to Judge Smith. You authored the opinion in Christopher v. Smith's claim to each of them. It starts with the Congressional Act. Here, the Congressional Act is not the Fair Labor Standards Act. It is the Immigration Reform and Control Act. There were specific items set for in Title VIII U.S.C., but there was gaps. The fundamental tenet of the H-2A program is that the work conditions should be to ensure H-2A employment does not adversely affect domestic workers. The Department of Labor then filled in the gaps with the specific H-2A regulations, and it did so. And it tells us and answers the questions in this case. Is Perry & Sons responsible for inbound travel expenses? Yes, it is. When is it responsible for those travel expenses? Once the worker completes 50 percent of the work contract. Is Perry & Sons responsible for the passport fees? The H-2A regulations say no. Is Perry & Sons responsible for tools of the trade? Yes, under the H-2A regulations. They all spell that out. That's where the gap was filled by the Department of Labor. Those H-2A regulations are not ambiguous. Given no ambiguity in the H-2A regulations, there's no need to go to further deference to the interpretation of the Fair Labor Standards Act. Because now the Fair Labor Standards Act, which goes back to the Long Island Care case that the guest workers in the Department of Labor cite, in that case what happened? Deference was given to the Department of Labor because the Department of Labor said, we're going to focus on the specific regulation we have adopted to determine the issue in this case. And the employee urged the court to look at a more general statute. But it sounds like you're arguing that the statute is so clear that we don't even have Chevron deference here. You're just looking at the statute. The statute just blows everything else away. I would say that there's an element of deference given to the decisions the Department of Labor made in adopting the H-2A regulations that specify what the employer must pay and when the employer must pay it. That's where the deference ends because the ambiguity in this case arises only when this attenuated. So you're saying that Chevron deference then because the regulations are construing an ambiguity in the statute? Is that what you're saying? I would say that it's Chevron deference in the sense that the Department of Labor filled gaps left by Congress when it created the H-2A program. And once those gaps were filled by these specific regulations, we really need not look any further. Yet we have this attenuated interpretation of the Fair Labor Standards Act that says, tools of the trade, well, that's an example, but that would also cover transportation. So help me with this. So the bottom line is you're saying the Department's kind of conflicted. Absolutely. Got one set of regulations for the H-2A visa program and another set for the FSLA. Correct. And they're irreconcilable. They are. And you're saying, no, our deference is due here because your interpretation is more logical than what their interpretation is, basically. I would say their interpretation of the FLSA is unreasonable and erroneous because, one, it conflicts with the H-2A regulations that the Department of Labor adopted. So what's our duty here? Do we have to harmonize? Or we look to one statute as being principally to be enforced against the other? Where do we go? I would say in this instance, Your Honor, there is inherent inconsistency. I give the guest workers in the Department of Labor an A for effort saying, well, parents and sons could theoretically comply with both by reimbursing a certain amount of travel expenses at the first week and then the remainder at 50 percent of the time. One, that's not a realistic interpretation, and it doesn't reconcile the two statutes because the H-2A regulation says if the employee completes 50 percent. What happens if they don't? We still have to reimburse because of this attenuated interpretation of the FLSA. These regulations speak to post-employment travel needed to do the job under the FLSA, not pre-employment travel to get to the job. Judge Jones recognized that flaw in the Department of Labor's interpretation, and I ask this Court to affirm that decision. Unless there's further questions, I'm out of time. Let me ask you one very quick question, please. Your position then is that before, in this case, the workers left Mexico, they were employed and they ought to be treated equally with people who were employed within the United States and who are treated differently in terms of these same costs. No, some of them aren't the same because you don't have the visa costs and so on, but otherwise they would be treated the same. I don't think that's exactly what I'm saying, Your Honor. I think what I'm saying is for the Department of Labor to advance an interpretation of a broad remedial statute like the Fair Labor Standards Act, that they themselves would apply only to H-2A guest workers but not apply to all workers that are covered by the FLSA, is unreasonable. If, because the language is incident of and necessary to employment. Pre-employment travel, they say in the H-2A context, satisfies that definition, but it would not for a domestic worker relocating within the United States for similar seasonal employment. That runs afoul of the congressional mandate that the H-2A program must be administered in a way so that it does not adversely affect domestic workers. And in that instance, that's the further reason why this Court should not give deference to the Department of Labor's interpretation of FLSA, because it runs afoul of the congressional mandate found in the Immigration Reform and Control Act. One exact site on the portion of the law that says that it can't be treated different than domestic workers. Yes, Your Honor. If 8 U.S.C. 1188 A.1.B is the congressional statute that says the employment upon the certification process, the Secretary of Labor must certify that the employment will not adversely affect the wages and working conditions of workers in the United States similarly situated. And then it goes on at 8 U.S.C. 1188 C.3.B.i that the employer will provide the wages, benefits and working conditions required pursuant to this section and regulations adopted by the Secretary of Labor, which directs us to the H-2A regulations, not the Fair Labor Standards Act. Thank you, counsel. Your time has expired. The case just – sorry, excuse me. We have some reserved time for Mr. Behar. Thank you, Judge. Very quickly. With respect to these pre-employment costs, of course they're reimbursable to the employer. Of course they're reimbursable to the employee. Excuse me. These transportation fees, the visa fees, the recruitment fees are no different than an employer who requires an employee to buy a uniform. The passport fee is not an issue here. The passport fee is not an issue. And I just wanted to point out that counsel for Perry and Sons seems to be conflating or confusing passport fees with visa fees. They're not the same. We have withdrawn our claim for our passport fees in deference to the DOL regulations. We are pursuing our claims for H-2A visa fees, documentation fees, recruitment fees, and the transportation fees, of course. So a couple of things to clarify. What about the 50 percent issue that you heard your opposing counsel argue? Yes. There is absolutely no conflict between this 50 percent issue and the FLSA. In fact, they can be read harmoniously for the simple reason that the 50 percent issue says that if the employer, and I'm talking about section 655.122H1, states that if the employer has not previously advanced transportation and subsistence costs, then it must do so at the midpoint of the contract. So by definition, that regulation contemplates that inbound travel and subsistence costs may be reimbursed prior to the 50 percent mark. And why? To raise the employee's wages up to the federally mandated minimum wage. What's the side on that, please? It is 20 CFR 655.122 subsection H1. Thank you. So the FLSA and the H-2A regulations can and should be read harmoniously. We give examples of how we can do that in our briefs. Thank you, Your Honor. For all these reasons, we ask that the district court opinion be reversed. Thank you very much, counsel. The case just argued will be submitted for decision, and the court will adjourn. All rise.
judges: Singleton, O'scannlain, Smith